The next case this morning is 522-0630, Henry Estate of John C. Hirschfeld, deceased. Arguing for the appellant is Eric Dorkin. Arguing for the appellee is Daniel Thies. Each side will have 15 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please, not only the clerk, is permitted to record these proceedings. Shall I begin, Your Honor? Counsel, for the appellant, yes. Please state your name for the record and you may proceed. Thank you. My name is Eric Dorkin. I represent the seven children of John Hirschfeld and his first wife. I will refer to them as necessary as the Hirschfeld children, otherwise it would use up most of  May it please the court. We are here seeking reversal of the trial court's August 8, 2020, dismissal order, dismissing the citation recovered with prejudice. The dismissal order itself was subject to a prior appeal, the facts of which I don't believe are relevant for the current hearing, so if the court is interested, we could discuss, but it is now a final order in our view and we are ready for the merits. What I would like to do today is discuss with you the law related to the citation and the dismissal and then focus on the posture of the case and to the extent that I discuss any facts or allegations, it is in the context that this was the dismissal of a citation purtuant to 2-615. The trial court addressed the citation, which brought three claims, breach of fiduciary duty in count one, conversion in count two, financial exploitation in count three. The financial exploitation count was dismissed because the statute was enacted after the accident issue here and it was not retroactive. The breach of fiduciary duty count was predicated upon actions taken by Mary Hirschfeld, John Hirschfeld's second wife, as agent under that power of attorney. The narrow issue addressed by the trial court and we believe before you today is whether or not the presumption of undue influence applies when an agent is acting under the power of attorney and the agent is a spouse. The trial court not only rejected that legal proposition, but concluded that the presumption of gift itself should apply. We believe the trial court was wrong on both counts and we believe the law is, we think, clear that the presumption of undue influence and the presumption of fraud apply whenever an agent is acting under a power of attorney. I'd like to start with two quotes from this court's ruling in Deason v. Gutzler. It's a 1993 decision. The issue before the court then and the issue before the court now is whether or not the marriage renders a spouse immune when the spouse is on the same side of the transaction. Briefly before I get to those quotes, I want to point out at the onset the difference between a number of the cases relied upon by the appellee and the cases relied on by the appellant are the nature of the transaction. A conveyance, which is the cases relied on by the appellee, which I'll discuss later, involve a transfer from one spouse to the other. That is, both spouses participate in the transaction. In the instant case and in the Deason case and ultimately in the Simon case, which I'll get to as well, the issue is when a spouse is on both sides of the transaction. Is the receiving spouse, that is the transferee, and is the transferring spouse by virtue of the agency document? And the Deason court in two quotes here, the marital relationship did not preclude a presumption of fraud. And then why it continued, since there was a power of attorney. And the court concluded thus, the fact that Robert was Pauline's husband does not defeat the presumption. In Deason, Robert, the husband, transferred real property and his wife's CDs, both of And in doing so, divested his wife of her then, she's alive, interest in that property. Yes. Wasn't there a prenuptial agreement? In our case, your honor? Yes. Yes, there was. And nothing about that agreement had been changed? That is correct. And in the agreement itself, it was the presumption that separate property was to remain separate property. Yes. Okay. I want to ask you about one of these provisions of power of attorney, which says my attorney shall not be empowered to make gifts to himself or those persons to whom he has a general obligation of support. How does that affect your case? I think it dovetails with, well, I think it's an independent basis other than the presumption. The trial court, and we quoted it in our brief, the trial court mistakenly, in a colloquy with me, suggested that by signing the power of attorney, there's implicit trust. So that, and I said, no, there's always a presumption of undue influence. There's always implicit trust in the power of attorney. So to your point, I think it is a second independent basis. But the notion that it's presumed a gift to a spouse, I think the FLE is trying to argue that that trumps the language of the power of attorney and trumps the holding indecent and Simon. Okay. What's the nature of the presumption of a fiduciary duty in terms of undue influence under a will, as opposed to the presumption of a power of attorney as a fiduciary? So the, in a will, in the, so taking a step back, a will is akin to the conveyance notion of a, because there's the transfer or is doing the transfer. So there is in a will, if the person is a fiduciary and they benefit, there's an added element for the four elements of undue influence of procurement. So you still have an added element, but if you're not a fiduciary, there will be no undue influence or there will be no presumption of undue influence. It's necessary, but not sufficient condition for a will contest because of the additional procurement prong for undue influence. And you consented to the issuance of this judgment, is that correct? Consent to the entry of the judgment, your honor? I didn't, we didn't consent to the dismissal, but we consented to having it converted to final. I didn't, why didn't you seek a 308 certification, rule 308? Well I guess I would say it twofold. The 308 certification is discretionary with the trial court and the appellate court. And there's, I think in this procedural posture, I think by making the judgment final, it vests a right to appeal. The same issue would be in front of the court. And I think if the court, if we would have certified and come up to the appellate court and it said there's no presumption, it would be as if it's final. And if we came up on a certification and said there is the presumption, we'd be in the same situation as we are now, that there is, if the court says there's a presumption, we just wouldn't be filing two discretionary motions. Because even if the trial court agrees to make the 308 findings, it's my understanding of the rules that this court still has the discretion whether to accept that 308. You may continue. Thank you. The other, turning then to the Simon case, and so what happens in Deason, just to now focus on the nature of the transaction, then moving to Simon, is that in Deason, the agent takes property owned exclusively by the principal and makes it property of the agent. In Simon, the husband takes joint property and divests his wife of the interest in the joint property, thereby making it his, and in that case, he makes a joint with another person whose defense was, no, that transaction was okay because it was done by the husband who's essentially immune from the presumption, and the Simon court said, no, the marital relationship does not preclude the presumption. So when you look at Simon and Deason, one focus is on when you take sole property and convert it to your property, you still get the presumption, that's Deason, and in Simon, if you take joint property and sever the interest of the principal and make it your own, it's also presumptively fraudulent. The other thing about those two cases that I think is important is that Deason was a 39-year marriage and Simon was a 40-year marriage. There is no fundamental immunity for length of marriage either. It is a question of law. If you are an agent, you have to account for what you did as an agent, and on that point, the appellees make the argument that there may have been transactions where she wasn't yet acting as agent. Our point is the following. She's liable to explain, at the very least, put aside whether she's ultimately liable, but she's required to explain those transactions for which she acted as agent. We've identified a bunch, and I will get to those in just a minute or two, but we're saying that every transaction she was involved in was an agency transaction, and we're not saying that every transaction that was an agency transaction will necessarily be undone. The question at the 615 posture is, does a presumption apply that it was fraudulent? Then, discovery, summary judgment, trial, what do the facts show about those transactions? Are they rebutted? Is the presumption gone? If they're not rebutted, what is the total of the damages? All of the cases cited by both parties, the principal cases, Dehart and Simon reversed 615s. All of the others were after evidentiary hearings. Deason, Meath, Mosh, Wold, all of them after evidentiary hearings. It's not appropriate at this time, if the presumption applies, to dismiss. Just briefly, some of the transactions that we've alleged- But didn't the trial court find that there is no presumption of fraud and quite the opposite, that all transactions were presumed gifts? So the trial court ruled as a matter of law that there's no presumption of fraud. That's the principal error. If there is a presumption of fraud- I'll take a step back. The allegations as we've alleged them would not survive if there was a presumption of gift. This sort of goes to your question about the 308 as well. The trial court held it's a presumption of gift. Our allegations would not survive that rule to get past the 615. The trial court is wrong and there's a presumption of undue influence. So if we allege, as we do in the complaint, in the citation, that she transferred the balance of his individual IRA account and purchased annuities in her name and for her benefit, that's using his property for her benefit as agent. That is an example of a transaction that would be presumptively fraudulent that she would, as a matter of fact, be able to rebut, but we never got that far. Because the trial court says I'm presuming all of them without looking at them independently, but I'm presuming those are all gifts. And it was our position that if you presume that to be a gift, I can't rebut that presumption. And she was removed as independent administrator? No, there was a special administrator appointed for the citation. So she was still the administrator, but there was a special administrator appointed for the citation. Functionally, I am not sure exactly how it would work in practice. We never got that far. But I will tell you, as we cited in our brief, the special administrator himself had problems with these transactions. It's not just the, if you will, the disgruntled heirs. This was an independent who did express concern about the transactions that needed explanation. But again, once you say there's a presumption of gift and not a presumption of fraud, there is no need for explanation as a matter of law. And that's where we ended up. At this point, rather than... And that alleges a fiduciary relationship, doesn't it? There is no dispute that there is a fiduciary relationship here, Your Honor. I don't believe there's a dispute on these transactions, yes. And if there's a fiduciary relationship under that particular document, there's no gifting. And we think under Deeson, if there's a fiduciary relationship, again, they're not conclusively fraudulent. That's not the law. She has the right to justify them. And I will end now. And to the extent I need to finish that point in my reply, I will do so. Thank you. Thank you, counsel. Any questions from Justice Vaughn or Justice Welch? No questions. I have a brief question, maybe. As I understand the case law, Meath, which was a 1951 case, said there would not be a presumption of fraud between spouses. But Dehart overruled that? No, so Meath says there's not a presumption of undue influence. And so I want to... This goes to that distinction I was making earlier. There's the conveyance issue where... So, for example, I'll use the husband-wife, since many of these cases are husband-wife. If the husband gives the wife $10,000, that's a conveyance. And Meath said that type of transaction we're not going to presume is undue influence. When the wife then says, takes the checkbook with her agency document or goes to the investment company with her agency document and signs over the check to herself for $100,000 as agent, the law in Deason and the law in Simon is... And the citing of Dehart is that Simon... It cited Simon approvingly. The law for those cases is when you're doing the transaction yourself without the other spouse participating, the presumption will rise. That's the distinction among those cases. All right, thank you. Thank you. No other questions? Counsel for Apley, you may proceed. State your name. Thank you, Justice Moore. Daniel Theis on behalf of Mary Hirschfeld. And to pick up on Justice Zvon's question, I think that Meath is actually directly on point here. And it's true, it did not involve a power of attorney. However, it did involve a wife who was acknowledged. Counsel, wasn't that case decided about at least 30 years before the Power of Attorney Act? Absolutely, Your Honor. And so powers of attorney were not yet in common use in estate planning as they are now. However, in the Meath case, the wife was in charge of the couple's finances. And a quote from the case, in fact, says that the husband had only a second grade education. And so, quote, it was generally conceded in the family that the husband very wisely let the wife hold the purse strings and conduct all the financial and business ventures carried on for the mutual benefit of the parties. So what was going on in Meath is that the wife told the husband who only had a second grade education could barely read what to do, and he did it. That is the functional equivalent of the power of attorney, as Mr. Dworkin says, where the agent is the one acting on behalf of the principal. The same thing was going on in Meath. And the key point the Supreme Court held is that in that circumstance where one spouse is in complete control of the finances, there still is no presumption of fraud. And that rule is still going to carry through to this case. Now, to back up for a second. Was there a prenuptial agreement in that case you cite?  However, I don't think the prenuptial agreement here really has any bearing on the case, because it says that both spouses are free to make gifts to each other and to change their estate planning for the benefit of the other at any point that they so desire. And so the prenuptial agreement- Would it be the case that she could do that using the power of attorney to transfer money to herself, even though the power of attorney expressly says she cannot? So, no, but that's not what's going on here. And in fact, what we have going on here is a married couple who have a common household, who are living together, who established a pattern of paying for their household expenses through their joint checking account, right? Which was made a joint checking account by John voluntarily, not under the power of attorney. And the issue with married couples is that very often this is going to be the way their finances work. Things are going to be intertwined. Each spouse has to make contributions towards the household expenses and it cannot be the case that when there's a power of attorney involved, the spouse who is named as an agent suddenly has to justify every transaction across the course of a 15-year marriage. Are you saying that she didn't make any of these transactions using the power of attorney? No, and this is an important part. She did make some transactions using the power of attorney. They're listed in her statement of significant actions. There are 33 of them, in fact, and that shows up on page CI-990 of the record. They're listed there. And in fact, I think it's important to step back and understand that there's a misunderstanding going on here. Petitioner's claim from the beginning has been to challenge every transaction that happened in the course of the marriage, including things like paying the mortgage, right? And going to the grocery store and paying for household expenses, right? They say in their opening brief, even, on their nature of the case, page four to five, that the issue involves transfers of decedent's assets, quote, overseen and or undertaken by Mary. And of course, overseen is the weasel word there because they are trying to include everything that happened over the course of the marriage. Now, of course, in their reply brief, they backtrack from that. And you've heard Mr. Dworkin again say, no, no, no, no, we're just challenging actions by Mary. Well, that's going to take out a large chunk of their claim. All you've got to do is go back and look at the citation and you'll see claim after claim totaling $2.5 million that they claim needs to be returned to the estate from Mary Hirschfeld. Well, John Hirschfeld at the height of his wealth was only ever worth 2.9 million. So they're asking you to assume that over 15 years, despite having a vacation home and keeping it up, despite living through the financial crisis of 2000 to 2010, and despite significant health issues including the need to hire home health aides, that John Hirschfeld's estate was depleted simply because Mary stole from him and not because she was using her power of attorney appropriately to take care of him. So what's really going on here, Your Honor, is that petitioners are seeking for the second time to require Mary to account for every transaction in the course of the 15-year marriage. The first time they tried to do that was through the citation to discover assets. Mary responded to that. She produced 20,000 pages of financial records, including credit card statements from the couples, financial accounts, every piece of paper having to do with their financial life together. And the court said, that's enough. I'm not going to require you to go through and justify every Sam's Club bill to explain how it was used for John's benefit and not for you. So I'm not going to order an explanation or an accounting. Petitioners didn't like that. So this is their second try. They bring the citation to recover, which is really not much more than a list of John Hirschfeld's assets, again, totaling two and a half million. And then the repeated refrain that those assets, quote, have not been accounted for, which is a phrase that petitioners use 26 times in the citation. And what they're really trying to do is they're trying to use the presumption so that that repeated refrain has not been accounted for substitutes for stating a claim, right? Now, this is not the normal 2-615 motion in which discovery has not yet happened. And that's an important point. Petitioners actually have, as I said, 20,000 pages of discovery, answers to over 210 interrogatories. They have a deposition of Mary. They issued 17 subpoenas in this case to banks and other financial institutions. They've received all of the answers to that discovery. And they'd be more than capable if Mary had done something that was truly fraudulent. If she took money out of John's account and went out and had a Vegas vacation, they have more than enough information to allege specific fraud like that. But they don't. But these allegations such as, I understand you said she used the money to pay mortgages and buy food. That benefits both parties. But she took some of his money and purchased life insurance policies on herself that only benefited her daughter. Isn't that transferring? That is not true. And there's no allegation of that. In fact, they allege two things. They allege that Mary transferred money into the joint checking account, which happened regularly to pay household expenses. And they allege then that she used money in the joint checking account to pay a couple of times premiums for her life insurance. Once the money is in the joint checking account though, either party has the right to access it. It's both parties' money. And the problem is money is fungible fundamentally, right? So when you've got a joint checking account, no matter where the money comes from, you can't necessarily tie what comes in to a particular expenditure going out. And it was a couple's common practice, again, to pay household expenses out of their joint checking account. That's perfectly acceptable. And so just the fact that Mary on a couple of occasions paid life insurance premiums also out of that account does not amount to fraud. It was her money just as much as it was his at that point. Now, I want to address also the question of whether or not this court, in order to find for Mary, needs to have an absolute holding that the presumption of fraud never applies to a married couple. I don't think you need to go that far. I think that's actually what Metha says. But if this court wants to exercise more caution, you can look at the Golgovsek case, which is also a 1993 Fifth District case. And it's not directly on point because it dealt with a testamentary transfer rather than a lifetime transfer. But what the court said there was, we might in some case decide that a presumption of fraud should apply, but this is not that case, right? This is page 790 to 91 of the Golgovsek case. They said, in the exercise of judicial restraint, it's enough to say that this is not the case where a presumption of fraud should apply, right? And I think at the very least, this court has enough alleged by petitioners in the citation to recover to say that this is not the case where a presumption of fraud should apply. And in particular, Mary's transactions did not deplete the entire estate. There was more than enough money to pay for John Hirschfeld's care through seven years of his illness. It was not a brief marriage. Mary was married to John for 15 years. There was no divorce or abandonment immediately after the transfers. Rather, Mary was the one who cared for him through his last illness. The power of attorney was not obtained shortly before the alleged fraud. Rather, it was done as part of routine estate planning years before the fraud happened when it's undisputed that John Hirschfeld was in full possession of his faculties. And as I mentioned already, there's been extensive discovery in this case already. So the presumption should not be applied as a stopgap to allow petitioners to state a claim when they can't comb through the 20,000 pages of records that they already have and pinpoint specific fraudulent transactions. So if ever there were a case where you would assume the best of a married couple rather than the worst, this is the one. And I would respectfully submit if you rule the other way that the presumption of fraud should apply even here, you will cause a common practice of naming a spouse as a power of attorney in routine estate planning to lead to a vulnerability for widows and widowers that is subject to exploitation. And if nothing else, the teaching of the Supreme Court in DeHart and of this court in Wlodzowcek is that such a burden on marriage would be in direct conflict with the public policy of this state, which recognizes the importance of marriage and of the marital relationship, right? So just to spin out for a moment to the practical consequences. Well, you've not addressed the fact that you have the unusual circumstance of a prenuptial agreement here. Well, Your Honor, again, I don't think- Does that affect your argument? I don't think it does affect my argument because the prenuptial agreement left open the possibility that both spouses could give gifts to each other, right? It also left open the possibility that either spouse could pay for the common marital expenses, which is in fact what happened if you combed through the financial records, the couple's common household expenses are being paid out of John Hirschfeld's accounts, right? Mary continued that practice once she was exercising authority under the POA, but that's not a gift to Mary. That's just a continuation of the practice, how the married couple had set up their financial life together. So that's very different than an outright gift. And again, to spell it out, we're talking about a married couple that have a joint checking account from which they pay expenses, right? If one couple comes home and puts his paycheck into the joint checking account and the other spouse goes out and spends something from that joint checking account on behalf of herself, petitioners want you to drop the rule where that would be presumptively fraudulent, right? And if that's the rule, anytime that there are disgruntled heirs after one spouse dies and you have a widow or a widower, anytime there are disgruntled heirs, they would be able to state a claim simply by saying, we want you to account for every expenditure that you have made out of those accounts over the course of the marriage. That would be an enormous burden on marriage and it can't be correct. Now, I wanna address the Deason case and the Simon case briefly as well. So the Deason case, first of all, everything that Mr. Dworkin said about it is dicta about what it says about the presumption. If you look at page 637 of the case, it says, quote, there is no issue raised in this appeal that James did not raise the presumption. So the court started from the assumption both parties had agreed that the presumption applied in that case. And it's actually not surprising that the parties agreed the presumption applied because the case was really about transfers to the daughter, not to the husband. And of course, there's no rule like the Mita case establishes for spouses with respect to transfers to a child, right? So the quote that Mr. Dworkin read to you, that the marital relationship, quote, did not preclude a presumption of fraud since there was a power of attorney. What that means is it does not preclude a presumption of fraud as to the agent's transfers to the daughter, not transfers to the husband. And of course, that makes sense because in that case and in the typical case, daughters are not sharing common household expenses, right? This was an adult daughter who'd moved up and gone away. So it's not like a married couple where they're buying groceries together and paying utility bills together, right? So it's a very different circumstances. And so in Deason, the parties agreed the presumption applied. The court didn't even have to opine on it. And in Simon, to jump to that one, Simon's really a unique case. And the reason is that the wife had given the husband explicit instructions. She said, I want to leave my estate to my children. And the husband said, yes, I agree. I'm going to help you do that. Appoint me power of attorney, right? So he induced her to give him the power of attorney based on his representations that he was going to honor her wishes. He then went to their lawyer and had the lawyer prepare a will that executed the wife's wishes. So everybody was clearly aware of what the wife wanted. And then shortly after the wife was executed, he took their joint securities that were held jointly and used the POA to transfer them into his name, which completely thwarted the estate plan that the wife had explicitly given him instructions to uphold. That's very different than this case where there were no such explicit instructions. And we're dealing with transactions over a 15-year period, not one transaction such as happened in the Simon case that everybody zeroed in on and identified as clearly contrary to the wife's wishes. So Simon, I think, is really in a category by itself because of that. And it's not a case that I would take to say that the presumption applies in every case, which, and of course, it could not overrule META in any case, even if it did establish that. So with that, I'm happy to take any additional questions and I appreciate the time. Justice Zvon and Welch, any questions? No questions. No other questions. Thank you, counsel. Thank you. Thank you. I want to start with an observation that that sounded like a factual rebuttal of the presumption, talking about the history, the nature of the transactions, the nature of the relationship, the routine, the state planning, how they've paid their bills in the past. That's precisely how you would rebut the presumption. But we're here on a 2615 motion. We're not here on a summary judgment motion where those facts are undisputed, nor are we defending the trial court's ruling after a trial and hearing that evidence. Let me talk about the numbers for just a second. And counsel said something that I believe he was asked, it may have been Justice Zvon, about the life insurance. And I believe he said that wasn't in, that wasn't alleged. And I'm looking at paragraph 54U of the citation, which is on the common law record 1643. All told, respondent spent $386,472 on life insurance for herself, listing her daughter, Kathleen Ann Calvert as beneficiary between 2008 and the date of decedent's death. So I've got $386,000 right there. That's not on his accounting that I can find. On November 23rd, 2011, respondent wrote herself a check for $23,272 drawn from decedent's individual financial account. That's 54 paragraph triple B on 1649. On 54 triple D, 1649. In January of 2012, respondent transferred the remaining $165,000 balance in decedent's individual Morgan Stanley IRA to a new Chesser Financial IRA where she set up a new Alliance annuity account, naming herself as beneficiary, signing for decedent as POA. I've just gotten us to $600,000 worth of transactions where she used his money exclusively for her benefit that wasn't a Verizon bill. It wasn't the groceries. And all she has to do now is explain those with facts. We're not fighting over the Verizon bill to the extent that the Verizon bills are there, that's easy. But when money is used like that as agent, again, he didn't give her. There's no note that says, I give to you, please help yourself to the $600,000 so you can buy the annuity and life insurance. Then we're in the conveyance world, and that's a much trickier world, I admit. But when you as the agent take for yourself that much money, the other point I would make about spouses and the parade of horribles, the financial exploitation statute would have applied had it been enacted in time. By its very terms, the financial exploitation statute applies to spouses, a person who is in a position of trust and including spouses. The law is, the law recognizes that there's no immunity for spouses. It's cautious. I agree with the language of Bogosik. It's cautious, but there's not total immunity. And again, we're not simply talking about the Verizon bill. Let me focus quickly on, it's in the impounded common law record 990 to 994, which is the accounting 33 items the council referenced. But I'll read a paragraph to you, which I think is telling in so many ways. This is Mary writing, Mary Hirschberg writing, after I reopened the bank account using the power of attorney, it could possibly be construed that all subsequent activity on that account took place under the durable power of attorney. It could be construed. Yes, it could be construed. We do. But this document doesn't include any of those transactions. And one other point about this, oh, this is our second bite at the apple. We asked for an accounting which is required under the Power of Attorney Act. She provided this document, which we found wholly insufficient. The court ordered her to do more. She did more. But now she's complaining that it's unfair for her to have to explain all the documents she dumped on us and that it's our job. If she took these transactions as fiduciary, she should explain them. Just like every other fiduciary. She had an opportunity before the citation to recover was filed to do an accounting to identify the life insurance, the annuities, and explain them and adjudicate them in context of the accounting. But she chose not to. But then she's using it as a weapon here. I see that my time has expired again. I would ask that you reverse the trial court in remand for further proceedings on the citation to recover. Thank you. Thank you, counsel. Questions from Justice Vaughn or Justice Welch? No questions. No questions. Thank you. Court will take this matter under advisement and issue its decision in due course. Thank you, counsel. Thank you.